FILED
2-26-2015
FEB 2 6 2015
JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY CAMPANALE | No. 13 CR 418<br><br>Judge Rebecca R. Pallmeyer |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant ANTHONY CAMPANALE, and his attorney, MICHAEL MONICO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with mail fraud affecting a financial institution, in violation of Title 18, United States Code, Section 1341 (Counts 1, 3, and 8), and wire fraud affecting a financial institution, in violation of Title 18, United States Code, Section 1343 (Counts 2 and 4-7).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with mail fraud affecting a financial institution, in violation of Title 18, United States Code, Section 1341.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning in or about October 2007, and continuing until in or about November 2008, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant ANTHONY CAMPANALE, along with others, including Steven Klebosits and Thomas Hyland, devised, intended to devise, and participated in a scheme to defraud lenders and their successors and to obtain money and property from lenders by means of materially false and fraudulent pretenses, representations, and promises, and defendant executed the scheme on October 19, 2007, by knowingly depositing and causing to be deposited, to be sent and delivered by United Parcel Service, an interstate commercial carrier, according to the directions thereon, an envelope containing a payoff check relating to the purchase of a property located at 5422 S. Laflin Street, Chicago, Illinois, in violation of Title 18, United States Code, Section 1341.

During the scheme, defendant was an attorney who represented at real estate closings entities that Klebosits and Hyland owned. These entities included SNAP Holdings, LLC, and various SNAP Holdings Series LLCs. Defendant knew that Klebosits and Hyland used SNAP Holdings and the Series LLCs to purchase and sell properties located in Chicago, Illinois. Defendant represented SNAP Holdings and the Series LLCs in transactions where SNAP Holdings and the various Series LLCs sold properties to buyers. Defendant's payments for representing SNAP Holdings and the Series LLCs at the closings were accurately disclosed on the HUD-1 settlement statements.

As part of the scheme, defendant helped Klebosits and Hyland use SNAP Holdings and the Series LLCs to sell properties to buyers fraudulently qualified for mortgage loans. In particular, defendant knew that Klebosits and Hyland paid buyers to purchase properties from SNAP Holdings, and that these payments were concealed from the lenders financing mortgage loans for the buyers.

Defendant helped Klebosits and Hyland conceal these payments from lenders and make these payments appear legitimate. For example, at defendant's direction, Klebosits and Hyland formed separate SNAP Holdings Series LLCs to serve as the sellers of record for each transaction. Defendant, Klebosits, and Hyland then caused the buyer in each transaction to be made a partial owner of the SNAP Holdings, Series LLC selling the property. Often this was done without the buyers' knowledge and consent. Defendant, Klebosits, and Hyland did this so that they could falsely claim that post-closing payments

3

to the buyers from SNAP Holdings were directed to the buyers as owners of the properties and not for their purchases of the properties.

In fact, defendant knew that the payments to the buyers were not directed to them as a part owner of the SNAP Holdings, Series LLC selling the property. Instead, defendant knew that the payments to the buyers were for their purchase of the properties, and were not being disclosed to the lenders financing mortgage loans to the buyers.

The undisclosed payments to buyers resulted in numerous fraudulent documents being submitted to lenders, including fraudulent real estate contracts that inflated the purchase price of the properties being sold and fraudulent HUD-1 settlement statements that failed to disclose the payments to the buyers. Information about the purchase price of a property and about payments to buyers for purchasing properties was material to lenders in deciding whether to fund a mortgage loan. In addition, lenders often sold mortgage loans to successor lenders and institutions, and information about the purchase price of a property and about payments made to buyers for purchasing properties was material to the successors' decisions to purchase mortgage loans.

In addition, by at least July 2008, defendant knew that Klebosits and Hyland were providing money to buyers for their down payments to purchase properties. As such, defendant knew the funds were being falsely represented to lenders as the buyers' own down payment funds. Information about the source of a buyer's down payment was material to lenders in deciding to fund a mortgage loan, and to successors' decisions to purchase a mortgage loan. Because defendant knew that Klebosits and Hyland, and not

the buyers, were the sources of the down payments, he also knew that fraudulent real estate contracts and HUD-1 settlement statements were being submitted to lenders.

One property that was part of the scheme was 5422 S. Laflin Street, Chicago, Illinois. On or about October 19, 2007, SNAP Holdings, LLC, Series 20 sold the 5422 S. Laflin property to a buyer referred to here as Individual A for $360,000. Individual A obtained a $324,000 mortgage loan from Citimortgage to purchase the property. At the time, Citimortgage was a wholly owned subsidiary of Citibank, an FDIC-insured financial institution. The loan from Citimortgage was funded by money that came from Citibank.

Defendant knew that SNAP Holdings paid Individual A for purchasing the property. The payment to Individual A caused various documents submitted to Citimortgage in this transaction to be false. For example, a real estate contract submitted to Citimortgage between Individual A and SNAP Holdings stated that Individual A was purchasing the property for $360,000. Defendant knew that Individual A was not purchasing the property for that amount because SNAP Holdings paid Individual A for purchasing the property.

In addition, the HUD-1 settlement statement for this transaction, which defendant signed as power of attorney for the seller, stated that Individual A was purchasing the property for $360,000. The HUD-1 settlement statement also did not disclose any payments from the seller to Individual A. Once again, defendant knew that this

information on the HUD-1 settlement statement was false because SNAP Holdings paid Individual A for purchasing the property.

Defendant knew that SNAP Holdings and its affiliated entities paid buyers for purchasing the twelve properties listed in Attachment A to this plea agreement. In addition, by at least July 2008, defendant knew that SNAP Holdings and affiliated entities funded down payments for buyers. The lenders in these transactions suffered the losses listed in Attachment A to this plea agreement because the loans were not repaid by the borrowers and because the values of the properties were insufficient to cover the loans.

As charged in Count One of the indictment, on or about October 19, 2007, as part of and to advance the scheme, defendant knowingly caused to be deposited, to be sent and delivered by United Parcel Service, an interstate commercial carrier, according to the directions thereon, an envelope containing a payoff check in the amount of $168,738.98, addressed to ZDE Investments, Inc., 2915 North Southport Avenue, Chicago, Illinois 60657-4112, for payment relating to Individual A's purchase of 5422 S. Laflin Street, Chicago, Illinois.

### Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 30 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of

probation for this offense. This offense also carries a maximum fine of $1,000,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

      b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

      a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii. Pursuant to Guideline § 2B1.1(b)(1)(J), defendant's offense level is increased by 18 levels because the loss amount is approximately $3,486,940, which exceeds $2,500,000 but is less than $7,000,000.

iii. Pursuant to Guideline § 2B1.1(b)(10)(C), defendant's offense level is increased by 2 levels because the offense involved sophisticated means. Defendant reserves the right to disagree.

iv. It is the government's position that, pursuant to Guideline § 3B1.1, defendant's offense level is increased by 2 levels because defendant used a special skill in a manner that significantly facilitated the commission or concealment of the offense.

v. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government's position is that the anticipated offense level is 26, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 63 to 78 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to

9

conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the

sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant acknowledges that the total amount of restitution owed to victims is $3,486,940, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment, as well as the forfeiture allegation as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18.  This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 13 CR 418.

19.  This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

20.  Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a.  **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

      i.  The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting

without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant

would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

   b.  **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

  21.  Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

22. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

23. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual

income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

25. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

27. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

28. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to

vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

31. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 2/26/15

_____
ZACHARY T. FARDON
United States Attorney

_____
JASON A. YONAN
Assistant U.S. Attorney

_____
ANTHONY CAMPANALE
Defendant

_____
MICHAEL MONICO
Attorney for Defendant

## United States v. Anthony Campanale, 13 CR 418
## Attachment A to Plea Agreement

| Property Address | Date of Transaction | Lender | Loan Amount | Sale Price After Foreclosure | Loss Amount |
|---|---|---|---|---|---|
| 5422 S. Laflin Street, Chicago, Illinois | 10/19/07 | Citimortgage | $324,000 | $20,000 | $304,000 |
| 5821 S. Carpenter Street, Chicago, Illinois | 10/23/07 | Citimortgage | $337,250 | $9,000 | $328,250 |
| 5724 S. Hoyne Avenue, Chicago, Illinois | 11/5/07 | HSBC | $337,250 | $65,310 | $271,940 |
| 5151 S. Laflin Street, Chicago, Illinois | 11/5/07 | Citimortgage | $324,000 | $6,000 | $318,000 |
| 5331 S. Honore Street, Chicago, Illinois | 11/14/07 | Citimortgage | $301,750 | $20,000 | $281,750 |
| 5708 S. Elizabeth Street, Chicago, Illinois | 11/16/07 | Citimortgage | $306,000 | $20,000 | $286,000 |
| 5335 S. Honore Street, Chicago, Illinois | 12/19/07 | Citimortgage | $314,500 | $25,000 | $289,500 |
| 5633 S. Bishop Street, Chicago, Illinois | 5/2/08 | Citimortgage | $292,000 | $30,000 | $262,000 |
| 6338 S. Laflin Street, Chicago, Illinois | 6/25/08 | Citimortgage | $288,000 | $7,500 | $280,500 |
| 6510 S. Winchester Avenue, Chicago, Illinois | 8/13/08 | Citimortgage | $288,000 | $17,500 | $270,500 |
| 5741 S. Justine Street, Chicago, Illinois | 7/30/08 | Countrywide | $292,000 | $10,500 | $281,500 |
| 5701 S. Damen Avenue, Chicago, Illinois | 11/17/08 | Provident | $328,500 | $15,500 | $313,000 |
| | | | | Total Loss | $3,486,940 |